***UNITED STATES DISTRICT COURT***
***DISTRICT OF MAINE***

| | | |
|---|---|---|
| ***BRUCE MASON,*** | ) | |
| | ) | |
| ***Plaintiff*** | ) | |
| | ) | |
| ***v.*** | ) | ***Civil No. 08-17-B-W*** |
| | ) | |
| ***MICHAEL J. ASTRUE,*** | ) | |
| ***Commissioner of Social Security,*** | ) | |
| | ) | |
| ***Defendant*** | ) | |

***REPORT AND RECOMMENDED DECISION[1]***

In this Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal, the plaintiff contends that the Decision Review Board failed to assess properly the effect of stress on his ability to perform certain jobs and failed to evaluate properly the opinion of his primary care physician. I recommend that the court vacate the decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520 & 416.920), the Decision Review Board found, in relevant part, that the plaintiff suffered from depression and a history of Crohn's disease, impairments that were severe but which did not meet or medically equal the criteria of any of the impairments listed in Appendix 1 to Subpart P, 20 C.F.R. Part 404 (the "Listings"), Finding 2, Record at 14; that the following limitations on his ability to perform work-related activities were

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on October 17, 2008, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

caused by these impairments: medium work which would not entail a highly stressful work environment, or tasks of a detailed or complex nature, Finding 3, *id*,; that the plaintiff's subjective complaints were not fully credible, Finding 4, *id*.; that he was unable to perform his past relevant work, Finding 5, *id*.; that, given his age (39, a "younger individual"), limited education, and residual functional capacity, if the plaintiff had a capacity to perform the full range of work at the medium exertional level, application of Rule 203.26 of Appendix 2 to Subpart P, 20 C.F.R. Part 404 (the "Grid") would direct a conclusion that he was not disabled, Findings 6-7, *id*.; that although he was not able to perform the full range of medium work, using the Grid as a framework for decision-making, there were a significant number of jobs in the national economy which the plaintiff could perform, including cleaner and vehicle cleaner, Finding 7, *id*.; and that he therefore was not disabled as that term is defined in the Social Security Act at any time through the date of the decision, Finding 8, Record at 15. The decision of the Decision Review Board is the final decision of the commissioner. 20 C.F.R. § 405.450(a).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The Decision Review Board reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 205.101 (incorporating 20 C.F.R. §§ 404.1520(f), 416.920(f)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The record must contain positive

evidence in support of the commissioner's findings regarding the plaintiff's residual functional capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

**Discussion**

The plaintiff first contends that the Decision Review Board failed to comply with Social Security Ruling 85-15 in evaluating the effect of its finding that he could not function in a highly stressful work environment and by "ignoring the [administrative law judge's] failure to include 'stress' as an issue in the hypothetical [question] proffered to the [vocational expert] at hearing." Plaintiff's Itemized Statement of Specific Errors ("Itemized Statement") (Docket No. 9) at 2-3. The Decision Review Board's opinion includes the following discussion of the plaintiff's depression, which it found to be a severe impairment:

> Regarding the claimant's depression, his condition has not reached the level of severity required in Section 12.04 of the Listing of Impairments. It has not resulted in several "marked" or one "extreme" limitation in the functional areas of daily living; social functioning; concentration, persistence, or pace, nor has [it] resulted in frequent decompensation episodes. While the claimant has been prescribed medication for his depressive symptoms, he has not been referred to a specialist for mental health treatment, nor has he been hospitalized for mental symptoms. In conjunction with a consultative psychological evaluation of October 4, 2006, the claimant was adequately groomed and casually dressed. He was fully oriented and his memory was essentially intact. He reported no symptoms of suicidal or homicidal ideation. His activities of daily living included wa[l]king up to 8 miles a day for 3-4 times during the week, since his car had broken down. He also reported enjoying hunting and fishing (Exhibit 10F).
>
> * **
>
> While the record reflects the presence of depression requiring . . . medication, the claimant has not been referred to a mental health professional, nor has [he] been hospitalized for mental symptoms. In connection with the consultative psychological evaluation by Donna Gates, Ph.D., on October 4, 2006, the claimant's typical day included walking up to 8 miles daily, three or four times a week, since his car had broken down. He reported enjoying fishing and hunting. On mental status examination, he was adequately groomed and casually dressed.

> His responses were adequately developed. He maintained good eye contact, and exhibited no depressive or anxiety features. He reported no feelings of suicidal or homicidal ideation. There were no psychotic features evident. He demonstrated good speech, and thought processes were logical and goal-oriented. His memory was essentially intact.
>
> Furthermore, on Wechsler Adult Intelligence testing (WAIS-III), the claimant's IQ scores fell within the average range (verbal IQ-90; performance IQ-86 and full scale IQ of 88). Although Dr. Gates' diagnosis was that of a depressive disorder, she felt the claimant was capable of relating adequately to co-workers, supervisors and the public, could function independently, and understand, remember and carry out simple job instructions (Exhibit 10F).
>
> In conjunction with Dr. Peck's observations concerning the claimant's mental status, his clinic note of September 16. 2006, reflected [that] the claimant's affect was appropriate. While his mood was somewhat depressed, he demonstrated good judgment and insight. He was not actively displaying any symptoms of wanting to harm himself or others. The claimant was being given a trial of Effexor with this visit (Exhibit 16F, page 13). A follow-up exam with Dr. Peck on December 12, 2006 revealed the claimant was "pushing himself to do more" despite depression (Exhibit 16F, page 9). A later office note from this source dated January 4, 2007, indicates the condition had improved (Exhibit 16F, page 3).

Record at 10-11.

The opinion states that "[f]rom a mental standpoint, the Decision Review Board finds the claimant cannot function in a highly stressful work environment, and cannot perform complicated and detailed tasks." *Id*. at 11. It goes on to discuss the apparent basis for this conclusion:

> Despite symptoms of depression, the claimant's condition has not required . . . referral to a mental health professional, nor has he been hospitalized for mental symptoms. When consultatively examined by a mental health professional, the claimant exhibited no deterioration in personal habit or hygiene. He maintained appropriate eye contact. He was fully oriented. There were no deficits reported in terms of speech, thought processes, or memory. He did not display any depressive or anxiety features during the evaluation. He related no thoughts of doing harm to himself or others. He related to Dr. Gates that he enjoyed fishing and hunting. The latest clinical observations from Dr. Peck

> indicate no significant mental status abnormalities; that he was "pushing himself to do more", and that his symptoms had improved.

*Id*. at 12. The Decision Review Board assigned the plaintiff a residual functional capacity for medium work "which would not entail a highly stressful work environment, or tasks of a detailed or complex nature." *Id*. at 14.

It is true, as the plaintiff points out, Itemized Statement at 3, that the First Circuit in *Lancellotta v. Secretary of Health & Human Servs*., 806 F.2d 284 (1st Cir. 1986), reversed an administrative law judge's conclusion at Step 5 of the sequential review process because he "did not explain what differences exist between [the plaintiff's] prior work and the available 'low-stress' jobs that would enable him to perform the latter when he cannot perform the former." *Id*. at 285. The First Circuit explained, "even if most individuals would not find it particularly stressful to do the jobs listed in the ALJ's decision, we have no evidence showing that [the plaintiff], who suffers from a severe mental impairment, would react the same way." *Id*. Observing that the administrative law judge had not evaluated the plaintiff's vocational abilities "in light of his anxiety disorder," the First Circuit found "no basis for the ALJ's conclusion that he can perform low stress work." *Id.*

However, the First Circuit in *Lancellotta* also cited Social Security Ruling 85-15, as does the plaintiff here, and Social Security Ruling 85-16. In doing so, the First Circuit clearly interpreted the Rulings to require the adjudicator of a Social Security benefits claim to evaluate a mental impairment in terms of its effect on the claimant's ability to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and customary work situations; and to deal with changes in a routine work setting. *Id*. at 286. That comparison was missing in *Lancellotta*.

Here, the Decision Review Board recited, and presumably relied on, Dr. Gates' conclusions that the claimant was capable of relating adequately to co-workers, supervisors, and the public, could function independently, and understand, remember, and carry out simple job instructions. Record at 11. This portion of the opinion accordingly addresses all of the requirements of the Rulings found to be necessary by the First Circuit, other than dealing with changes in a routine work setting. *See Justason v. Barnhart*, 2005 WL 3263934 (D. Me. Nov. 30, 2005), at *5 (sufficient that administrative law judge did not simply find that plaintiff required "low stress" job but also defined parameters of "low stress" as occasional decision-making, occasional changes in work setting, and occasional exercises of judgment). In *MacFarlane v. Astrue*, 2008 WL 660225 (D. Me. Mar. 5, 2008), the other case cited by the plaintiff, the administrative law judge made no attempt to define "high stress work" when he found that the plaintiff could not do "high stress work." *Id*. at *3. This case is distinguishable, based on *Lancellotta*.

The only question remaining on this issue, then, is the omission from the Decision Review Board's opinion of any consideration of the plaintiff's ability to deal with changes in a routine work setting. On this point, the plaintiff would undoubtedly point to the evaluation of Dr. Barry F. Rudnick, a state-agency reviewer who did not examine the plaintiff, who indicated that the plaintiff's ability to respond appropriately to changes in a routine work setting would be moderately affected by his mental impairment. Record at 276. However, the plaintiff's treating physician, Darin Peck, M.D., indicated that the plaintiff's ability to respond appropriately to changes in the work setting was not markedly limited by his mental symptoms, disorder, and/or medication. *Id*. at 288. Where there is conflicting medical evidence in the record, the adjudicator is entitled to resolve that conflict. *Rodriguez v. Secretary of Health & Human Servs.*,

647 F.2d 218, 222 (1st Cir. 1981). Where, as here, a specific finding on the point has not been made by the adjudicator, it is sufficient that medical evidence in the record supports a conclusion that upholds the adjudicator's ultimate finding. *Id*. at 223. To hold otherwise would be to require remand for the essentially empty exercise of adding a citation to the appropriate exhibit in the opinion of the administrative law judge or the Decision Review Board.

The plaintiff's second argument, that his case must be remanded because the Decision Review Board "ignor[ed]" the failure of the administrative law judge to include stress in the hypothetical question he posed to the vocational expert at hearing, Motion at 3, is without merit.[2] The fact that the word "stress" was not used, when the specific "basic work-related activities" that the *Lancellotta* court found essential to a consideration of stress, 806 F.3d at 286, were included, Record at 320, is inconsequential. Even if that were not the case, the attorney for the plaintiff asked a follow-up hypothetical question that included all of the limitations the plaintiff now claims were caused by his mental impairment, so any "failure" of the administrative law judge to include any or all of those stress-related limitations in his hypothetical question was harmless. The information which the plaintiff considers necessary was included in the record before the Decision Review Board.

The plaintiff's third and final argument is that the Decision Review Board improperly "ignor[ed]" Dr. Peck's statements "that the Plaintiff's mental ability to perform certain work-related activities was either markedly limited or effectively precluded." Itemized Statement at 4. The plaintiff dismisses the Decision Review Board's discussion of Dr. Peck's completion of a mental status questionnaire (Record at 287-88) as "cursory," asserting that it "failed to mention Dr. Peck's findings as to the severe functional limitations reflected in his questionnaire and

[2] This is an issue that counsel for the plaintiff did not present to the Decision Review Board, despite the administrative law judge's written invitation to him and his client to submit a written statement to the Board, "explaining why you agree or disagree with my decision." Record at 16.

assigned no weight to those findings." Itemized Statement at 6. The Decision Review Board's opinion notes that Dr. Peck indicated on January 4, 2007, that the plaintiff's mental condition had improved and that "the latest clinical observations from Dr. Peck indicate no significant mental status abnormalities . . . and that his symptoms had improved." Record at 11, 12. The questionnaire completed by Dr. Peck is dated November 7, 2006. *Id*. at 288. The observation that the plaintiff's depression "seems to be improved" is dated January 4, 2007. *Id.* at 251. This followed a similar observation on December 19, 2006. *Id*. at 252. As of November 7, 2006, Dr. Peck found that the plaintiff's mental impairment markedly limited or effectively precluded the following: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration sufficient to perform work tasks throughout an eight hour work day; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and the ability to complete a normal work day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id*. at 287.

At oral argument, counsel for the government conceded that the Decision Review Board did not state its reasons for rejecting Dr. Peck's detailed opinion, but contended that the fact that the Board noted that Dr. Peck had reported improvement in the plaintiff's mental condition since he made the specific findings "absolved" it from any such error, citing *Encarnacion v. Barnhart*, 2006 WL 3834235 (D. Conn. June 15, 2006), and *Ware v. Apfel*, 2000 WL 1707942 (S.D.Ind. Nov. 14, 2000).

It is not accurate to suggest, as the plaintiff does, Itemized Statement at 5, that the Decision Review Board ignored Dr. Peck's medical opinion. It is accurate to say, however, that

the Decision Review Board did not comply with 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2)[3] and Social Security Ruling 96-2p, in that its opinion does not indicate what weight was assigned to Dr. Peck's substantive opinions nor what the "good reasons" for that weight were. The regulations state, in relevant part: "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The Ruling provides, in relevant part:

> When the determination of decision: is not fully favorable . . . the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Social Security Ruling 96-2p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2008), at 114-15. This standard is not met by an observation that the treating source noted "improvement" in an underlying mental impairment in the two months since that source had indicated that the impairment caused severe and specific limitations on several work-related functions. This error may be harmless, if there is directly conflicting medical evidence in the record on which the Decision Review Board was entitled to rely, *Hodgson v. Barnhart*, 2004 WL 1529264 (D. Me. June 14, 2004), at *5, but the attorney for the commissioner did not point to any such evidence at oral argument, nor did the Decision Review Board discuss any in its opinion.

In *Encarnacion*, the magistrate judge was considering an argument that the administrative law judge erred by failing to consider a treating podiatrist's opinion that the claimant was disabled and could not work. 2006 WL 3834235 at *12. After noting that the administrative law judge could not be bound by this opinion in any event, the judge recited substantial evidence in

[3] Cited regulations that do not appear in 20 C.F.R. Part 405 are incorporated therein by reference by 20 C.F.R. §§ 205.101 & 205.301(a).

the record that contradicted the podiatrist's opinion. *Id*. In *Ware*, the claimant alleged that the administrative law judge failed to give sufficient weight to a treating physician's opinion, but the court noted that this physician did not have an extensive treatment relationship with the claimant, provided "almost no indication of the clinical and laboratory diagnostic techniques" he used to formulate his opinion, and offered conclusions that were not consistent with other substantial medical evidence in the record. 2000 WL 1707942 at *10. In addition, the administrative law judge ordered a post-hearing evaluation of the claimant on the impairment at issue. *Id*. I do not read either of these opinions to support the commissioner's assertion that a treating physician's note of general improvement, after making specific findings with respect to limitations caused by an impairment, makes it unnecessary to comply with SSR 96-2p.

**Conclusion**

For the foregoing reason, I recommend that the commissioner's decision be **VACATED** and the case remanded for further proceedings consistent with this recommended decision.

***NOTICE***

***A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.***

***Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.***

Dated this 4th day of November, 2008.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge